Michael St. James, CSB No. 95653
St. James Law, P.C.
22 Battery Street, Suite 888
San Francisco, California 94111
(415) 391-7566 Telephone
(415) 391-7568 Facsimile
michael@stjames-law.com

Counsel for Debtor

# UNITED STATES BANKRUPTCY COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| In re | Case No. 17-30314 |
| POST GREEN FELL LLC | Chapter 11 |
| Debtor | DATE: June 30, 2017<br>TIME: 10:00 a.m.<br>JUDGE: Honorable Dennis Montali |

## OPPOSITION TO MOTION TO CONVERT AND FOR OTHER RELIEF

<u>Table of Contents</u>

I.      Summary ................................................................................................... 1

II.     Relevant Facts .......................................................................................... 2

        A.      Background ................................................................................... 2

        B.      Financial Problems ...................................................................... 3

        C.      Current Circumstances of the 4 Properties .............................. 4

        D.      624 Stanyan's Chapter 11 Case .................................................. 5

        E.      The Instant Case .......................................................................... 5

        F.      The Proposed Reorganization .................................................... 6

III.    Rental Income and Derivative Standing ................................................ 7

        A.      The Current *Status Quo* ............................................................. 7

        B.      The Proposed Derivative Standing "Solution" ......................... 8

        C.      Conclusion Regarding Leasing .................................................. 9

IV.     The Motions Must be Denied as a Matter of Law .............................. 10

        A.      The Motions Must be Denied Due to Inadequate Service ....... 10

        B.      The Conversion and Trustee Motions Must be Denied on the Merits ...................... 11

        C.      Derivative Standing Must be Denied on the Merits ................. 13

VI      Conclusion ........................................................................................... 14

Exhibits:

        A       Master Mailing Matrix

        B.      Certificate of Service

# I.  SUMMARY

Green & Post Partners ("GPP") argues that the properties owned by Post Green Fell LLC, Debtor and Debtor-in-Possession (the "Debtor"), should be rented to paying tenants, a proposition which – in the abstract – cannot reasonably be challenged.  It then takes the fact that the properties are not currently rented to paying tenants as "evidence" that the Debtor has an incurable conflict of interest, and on that premise, GPP now moves the Court to convert the case, to appoint a Chapter 11 Trustee or for derivative standing.

The relief sought is unsupportable as a matter of law, but more importantly, it is unsupportable as a matter of fact.

On the merits of the underlying issue, the Debtor suggests that in its current circumstances, there is no viable path to install rent paying tenants in the properties within a meaningful time-frame; i.e., prior to the resolution of *624 Stanyan vs IRS,* which is expected to occur within the next 60 days.  The limited scope of the derivative relief GPP seeks essentially acknowledges this fact.

The Motions to Convert and to Appoint a Chapter 11 Trustee must be denied.  First, the motions are not procedurally proper: they must be served on all creditors and parties in interest, and they clearly were not.  In the absence of proper service, the Motions must be summarily denied.

Were the Court to turn to the merits, there is no substantive basis on which the Motions could be granted.  The only evidence is that (a) Movant is adequately protected by a substantial equity cushion; (b) the Debtor is attempting to effect its reorganization as rapidly as practicable; and (c) the practical problem about which GPP complains cannot be resolved more quickly that the Debtor expects its reorganization to be resolved and implemented.

The requested alternative relief will only needlessly increase expenses and burdens on all parties.  Significantly, it does not propose to confer *any* benefit on creditors or the estate; it simply seeks to pre-position GPP for a foreclosure.  The alternative relief must be denied.

## II. RELEVANT FACTS

### A. *Background*

In 1984, Laurence F. Nasey purchased a garage and automotive repair business located at 2035 Divisadero Street, San Francisco, California, named the Automotive Clinic, Inc. ("ACI"). Mr. Nasey's operation of ACI was successful, enabling him personally to purchase four properties in the late 1980s that would ultimately be occupied by ACI as a tenant: 2360 Post Street, 1776 Green Street and 1213 Fell Street (collectively, the "PGF Properties") and 624 Stanyan Street ("Stanyan" and collectively with the PGF Properties, the "4 Properties").

In 2006, Mr. Nasey and his wife Denise divorced. Denise was to receive $2 million to pay off her community property rights in, *inter alia,* ACI and the 4 Properties. In 2007, Mr. Nasey arranged to refinance the 4 Properties, extracting $250,000 in net proceeds from each property to pay down the obligation to Denise. The remaining $1 million obligation to Denise took the form of a judgment lien encumbering the 4 Properties; the balance currently outstanding on that judgment lien is approximately $486,000.

One of the lenders in the 2007 refinance transactions required that each of the 4 Properties be placed in its own single asset entity (collectively, the "Single Asset Entities"). In return for the transfer of the real property to each Single Asset Entity, Mr. Nasey received all of the equity in the Single Asset Entity. Several years later, he transferred 2% of the equity in each entity to his adult son, Laurence R. Nasey.

ACI entered into triple-net leases with each of the Single Asset Entities, under which its base rent obligation approximated the mortgage payment for the property.

### B. Financial Problems

1. ACI successfully operated Ted & Al's Towing, which entered into a contract to become a principal provider of San Francisco towing services to AAA. At its peak in the late 2000s, Ted and Al was receiving 6,500 calls for tows per month from AAA customers, and was required to obtain substantial equipment and personnel to provide that service. Unfortunately, in 2008 and 2009, AAA began "optimizing" to contain costs by using technology to find the closest available tow truck, which resulted in calls plummeting, ultimately to less than 50 per month. The expenses associated with a sudden expansion in the towing business followed by a contraction in towing business drained ACI of cash and operating funds.

As a consequence, commencing in approximately 2009, ACI failed to pay payroll taxes timely and in full. The IRS, and ultimately certain other taxing authorities, undertook active collection and enforcement efforts. In recent years, ACI has been subjected to numerous levies on its bank accounts, which severely disrupted its ability to pay rent to the Single Asset Entities, and consequently their ability to pay their mortgages.

In the fall of 2015, the IRS recorded "nominee tax liens" against the four Single Asset Entities and their 4 Properties. The first set of nominee tax liens sought to recover all taxes owed by ACI, then aggregating approximately $7 million, on the theory that the Single Asset Entities held the 4 Properties as the "nominee" of ACI. The second set of nominee tax liens sought to recover approximately $2.5 million of "100% penalty" taxes owed by Mr. Nasey, on the premise that the Single Asset Entities held the 4 Properties as the "nominee" of Mr. Nasey.

With each of the 4 Properties encumbered by almost $10 million in duplicative nominee tax liens, it was impossible to refinance the properties so as to attempt to satisfy the tax debt.

## C.     Current Circumstances of the 4 Properties

Certain debts secured by the 4 Properties were cross-collateralized:  the same obligation, to Green & Post Partners, was secured by first deeds of trust on both the Post Street property and the Green Street property; the obligation to Grand Pacific Financing Corporation, secured by a first deed of trust encumbering the Stanyan property, was also secured by a second deed of trust encumbering the Fell property.  Finally, as noted, Denise's judgment lien encumbered all 4 Properties.

Viewed in the aggregate, and without double counting the cross-collateralized debt, the 4 Properties have substantial equity in excess of the mortgages and the judgment lien.

| | | |
|---|---|---|
| Aggregate Scheduled Value | $ | 24,100,000 |
| | | |
| Green & Post Partners | $ | (5,600,000) |
| Lone Oak (Fell) | $ | (2,900,000) |
| Grand Pacific (Stanyan) | $ | (2,850,000) |
| Denise Nasey | $ | (486,000) |
| | | |
| Net Equity | $ | 13,264,000 |

Assuming *arguendo* that the nominee tax claims were valid and enforceable, there would remain equity in the 4 Properties if subjected to an orderly liquidation:

| | | |
|---|---|---|
| Net Equity | $ | 13,264,000 |
| | | |
| Aggregate Tax Debt (per Claim 1) | $ | (8,908,831) |
| | | |
| Net Equity After ACI Taxes | $ | 4,355,169 |

It is appropriate for the Debtor to administer its case and assets so as to maximize the recovery to all creditors entitled to a recovery therefrom, after obtaining a ruling from the Court regarding the validity of the asserted nominee tax liens.

### D.    624 Stanyan's Chapter 11 Case

The mortgage held by Grand Pacific Financing Corporation secured by a first deed of trust against the Stanyan property (and a second deed of trust against the Fell property) came due according to its terms.  As a result of the nominee tax liens, it could not be refinanced, so on September 1, 2016, immediately prior to a scheduled foreclosure sale, 624 Stanyan Street LLC filed a Chapter 11 petition, commencing Case No. 16-30965.

Shortly thereafter, Stanyan filed an Adversary Proceeding to determine the nature, extent and validity of, *inter alia*, the nominee tax liens.  As discussed before; Dkt #34, 5:19-10:23; there is little prospect that the nominee tax liens will be found to be valid or enforceable.  A summary judgment motion is set for hearing on June 29, 2017 and the Adversary Proceeding has been set for trial on July 24, 2017.  There is every reason to expect the *624 Stanyan vs. IRS* Adversary Proceeding to be resolved within 60 days.

### E.    The Instant Case

The Green & Post Partners debt, secured by first deeds of trust on the Green and Post properties, went into default and those properties were scheduled for a foreclosure sale on April 4, 2017.  Shortly before that, the Debtor was formed, the Post, Green and Fell properties were transferred into it, and it filed the instant Chapter 11 case.

In this case, as in the constituent single asset cases, there are no unsecured creditors, equity ownership is identical in the Debtor as it was in the Post, Green and Fell Single Asset Entities, and the problem preventing a constructive business resolution of their circumstances is identical for all:  the existence of meritless nominee tax liens preventing – until defeated in litigation – any sale or refinance of any of the properties.

Here, the formation of the Debtor and the transfer of the properties to it represented a reasonable and prudent step to provide for a prompt and effective resolution and reorganization, without unnecessary expense to the Debtor or its creditors, and without an unnecessary burden on the judicial process.

### F.    The Proposed Reorganization

The Debtor believes that its future will be driven by the outcome in the *624 Stanyan v. IRS* Adversary Proceeding, expected to be resolved within 60 days. Since principles of claim and issue preclusion may not apply, the Debtor has commenced a parallel Adversary Proceeding: *Post Green Fell v. IRS*, Adv. Pro. 17-3033. But in fact all of the Single Purpose Entities were administered and operated in the same manner, and so the result in the *Stanyan* Adversary Proceeding is almost certain to be replicated in the *Post Green Fell* Adversary Proceeding.

If the Debtor prevails, it will be possible to refinance the properties, and in that process to rent the properties to paying tenants who can be assured the enjoyment of long-term tenancies. Alternatively, the properties could be sold, releasing very substantial equities. Since most of the potential purchasers of the properties are interested in their development potential, the properties will likely prove more valuable if sold vacant, rather than encumbered by long-term leases.

If the IRS prevails, the Debtor will sell the properties in an effort to maximize the recovery to creditors. In order to do so, it will be important to be able to deliver the properties to buyers unencumbered by long term leases. If the Debtor can achieve sales at or above the Scheduled values, the properties should be able to retire all debts, including the asserted nominee tax liens, and potentially generate a material recovery for equity in addition.

Until there is a resolution of the *624 Stanyan vs. IRS* Adversary Proceeding, it is difficult responsibly to proceed with a reorganization. Upon obtaining that resolution, expected within the next

60 days, the Debtor is prepared immediately to implement a practical path to a reorganization by implementing sales or refinances coupled with retenanting the properties.

## III.  RENTAL INCOME AND DERIVATIVE STANDING

At the core of GPP's Motion is its contention that the rental *status quo* of the properties is unacceptable, is the result of a conflict of interest held by the Debtor and can be remedied only by granting derivative standing to GPP to evict the current tenant.  As a factual matter, only the first of the three statements enjoys even a measure of truth.

### A.  *The Current Status Quo*

As noted, over the course of many years, ACI became the tenant of each of the 4 Properties, under triple-net leases which provided that it would pay rent approximating the amount of the mortgages on the properties. This stat*us quo* worked well for many years.

Within the past few years, ACI ceased operations at all of the properties other than 624 Stanyan. With that sole exception, the subject properties are used by ACI only for storage

As the IRS and other taxing authorities increased collection efforts against ACI, regularly levying its bank accounts, it faced increasing difficulties in its efforts to pay rent.  ACI has been unable to pay rent following October 2016.  As a result of ACI's inability to pay rent, the Single Purpose Entities were unable to fund their mortgage payments, precipitating the pending foreclosures and the instant bankruptcy case.

Looking forward, ACI's occupancy of the premises is only very temporary.  If the 4 Properties are sold, it is important that no new long-term tenant be imposed on them: substantially all of the prospective purchasers are motivated by the 4 Properties' development potential and would view a long-

term tenant as an impediment reducing the properties' value. (ACI will promptly and voluntarily vacate as part of any Court-approved sale.)

Were it preferable to subject the properties to long-term leases, that could not practically be achieved unless and until there is a reorganization.

The properties consist of commercial rental space, last used for automotive repair and storage, and not currently in rentable condition other than for use as storage. Material expense would likely be incurred to convert any of the spaces to a new commercial use. Ordinarily, that expense would be paid by the landlord in the form of a tenant improvement allowance; where, as here, the landlord is impecunious, the tenant might be persuaded to fund the expense with appropriate financial concessions in the lease agreement.

However the improvements are funded, a tenant will be willing to proceed only if assured of a long-term tenancy. Upon appropriate disclosure of the Debtor's current financial circumstances and the pendency of foreclosures, a tenant would insist upon non-disturbance agreements ("NDA") with the secured creditors. Believing it could not deliver such NDAs and concerned that encumbering the properties with long-term leases would impair their sale value, the Debtor has not attempted to market the properties for lease.

As a factual matter, it is submitted that the current *status quo* does not represent the result of some conflict of interest: it represents the practical reality of the Debtor's circumstances and the best means of minimizing expense and preserving value for what is expected to be a period of only a couple of months.

### B. The Proposed Derivative Standing "Solution"

In this context, GPP's proposal for derivative standing is strikingly devoid of practical purpose. GPP seeks derivative standing for peculiarly limited objective: essentially *only* to litigate with and evict

ACI. ("If given standing, the Lender would, on behalf of the Estate: (1) exercise the Debtor's rights under the Leases to give ACI 60 days' notice of termination; (2) file a motion to reject the Leases immediately; and (3) sue ACI for unlawful detainer and to collect past-due rent." Brief: 6:13-16). Peculiarly absent is any request to attempt to lease the properties or to generate any constructive alternative to the *status quo*.

As noted, ACI is willing to surrender the premises promptly in favor of any court-approved new tenant or sale, without any need for a 60 day notice, rejection motion or unlawful detainer action. It is willing to submit to the jurisdiction of the Court summarily to enforce that offer.

The only other relief sought – seeking a judgment against ACI – is clearly a waste of money and effort: with the IRS and other taxing authorities levying on ACI to collect almost $9 million in tax debts – secured by blanket tax liens – the prospect that a new judgment would enjoy and retain a recovery is trivial.

As a practical matter, the requested derivative relief represents a pointless waste of time and effort from the perspective of the bankruptcy estate. It is understandable, however, from the perspective of a creditor hoping to be permitted to foreclose, since it would enable the foreclosing creditor to clear the premises in order to speed the disposition of the property after foreclosure. It is doubtful whether in the abstract a Court could appropriately order such relief as "adequate protection" for the creditor. In any event, here GPP proposes to seek the relief under the body of law permitting derivative standing, and as discussed below, it is clear that derivative standing cannot be used to pre-position a foreclosing creditor.

### C.     *Conclusion Regarding Leasing*

The Debtor acknowledges that the *status quo* is not an acceptable long-term solution. Given the time frames of its current circumstances, however, it believes the *status quo* cannot realistically be

improved before there is a ruling in *624 Stanyan vs. IRS*.    GPP's proposal for derivative standing does not seek to improve the *status quo* for the benefit of the estate; it seeks simply to pre-position a future foreclosure.

## IV.    THE MOTIONS MUST BE DENIED AS A MATTER OF LAW

### A.    *The Motions Must Be Denied Due to Inadequate Service*

The Motions to Convert and to appoint a Chapter 11 Trustee expressly require notice to all creditors.  See, Fed. R. Bankr. P. 2002(a).

While there is no statute or rule that prescribes the persons who must receive notice of a motion for derivative standing, the Bankruptcy Local Rules supplies the answer.  In the absence of a different mandate, notices are to be served on all creditors.   BLR 2002-1(c).

The Bankruptcy Local Rules also specify the mechanism for giving notice to all creditors: a mailing must be effected to the persons identified in the Court's current master mailing matrix.

**2002-1(c) Address List.**
Unless otherwise ordered, all notices shall be served on the persons entitled to notice under Bankruptcy Rule 2002(g). *In order to comply with this rule, the initiating party must use a current mailing list.*

**Commentary**
Attorneys should obtain current mailing list by logging onto CM/ECF, clicking on "Reports" and then "Mailing Matrix by Case." This generates the same list the Court would use for notice and permits compliance with this local rule.

BLR 2002-1 (emphasis supplied).

Copies of the current Master Mailing Matrix and the Movant's Certificate of Service are attached hereto as Exhibits A and B.  Movant served its Motions on a very small subset of the required service list.  Since the Motion was not the subject of adequate notice, it must be denied.

**B.     The Conversion and Trustee Motions Must be Denied on the Merits**

The factual premise of the Conversion and Trustee Motions is that the Debtor is wrongfully failing to retenant the properties with paying tenants due to a conflict of interest.

As discussed above, that premise is incorrect: absent an NDA provided by the applicable secured creditor, no paying tenant can be obtained for any of the premises, and there is no suggestion that any of the secured creditors – e.g., the Movant – would provide such an NDA. Moreover, the ultimate resolution is likely to be a sale of the properties, and a sale of properties free of long-term leases will enhance their value.  ACI is willing consensually to surrender the premises as part of any Court-approved sale or lease.  There is no conflict of interest, let alone one which meaningfully and adversely affects the bankruptcy estate.

The first two Motions – to convert, and to appoint a Chapter 11 Trustee – are clearly examples of over-reach.   As noted in the case on which the Movant principally relies, conversion and the appointment of a trustee are aberrations, which should be considered only in extraordinary and pathological circumstances:

Regarding appointment of a Trustee:

> *See  In re Sharon Steel Corp.*, 871 F.2d 1217, 1226 (3d Cir. 1989) ("It is settled that appointment of a trustee should be the exception, rather than the rule."); 7 *Collier on Bankruptcy* P 1104.02[1] (15th rev. ed. 1998) (noting that appointment of a trustee in a Chapter 11 case is an "extraordinary" remedy).

> Appointing a trustee in a Chapter 11 case is an "extraordinary" remedy, 7 *Collier on Bankruptcy* P 11402[1] (15th rev. ed. 1998), and there is a corresponding "strong presumption" that the debtor should be permitted to remain in possession.  *In re Marvel Entertainment Group, Inc.*, 140 F.3d 463, 471 (3d Cir. 1991).

*Official Comm. of Unsecured Creditors of Cybergenics Corp. ex rel. Cybergenics Corp. v. Chinery*, 330 F.3d 548, 560, 577 (3rd. Cir. 2003)

Rejecting Conversion:

These solutions are far more radical than even the appointment of a trustee. Converting the case to Chapter 7 would cause the immediate appointment of a trustee, the option rejected *supra*, and would cause dissolution of the Committee. More importantly, though, Chapter 7 proceedings are liquidations, and this option would amount to instructing management: "Pursue this action, or we will move to dissolve your company."

*Cybergenics, supra*, 330 F. 3d. at 579.

Conversion to Chapter 7 and the appointment of a Chapter 11 Trustee are "radical" solutions to aberrational problems. As discussed above and below, the Debtor is attempting to deal with its realities responsibly. Absent a resolution of the IRS litigation and a sale or refinance, it cannot retenant the properties with tenants ready and willing to pay rent, because those tenants will not undertake a long-term commitment to a property which is on the verge of foreclosure.

The imposition of a trustee would only add disruption and expense to the process of administering these properties, displacing the person who is most knowledgeable about the properties and their marketing with someone who has no prior knowledge at all. Where, as here, the Debtor is properly and expeditiously seeking an effective reorganization, the appointment of a trustee is neither factually nor legally appropriate. The Motions to convert and to appoint a Chapter 11 trustee must be denied on the merits.

### C.    *Derivative Standing Must be Denied on the Merits*

The problem derivative standing is intended to address is described aptly in the decision on which Movant relies:

> The problem at bar is that the intended system broke down. The debtor refused to bring an action that the Bankruptcy Court found would benefit the estate, and thereby violated its fiduciary duty to maximize the estate's value. It is in precisely this situation that bankruptcy courts' equitable powers are most valuable, for the courts are able to craft flexible remedies that, while not expressly authorized by the Code, effect the result the Code was designed to obtain.

*Cybergenics, supra,* 330 F.3d. 568.  Here, there is no suggestion that the "system [has] broke[n] down": the Debtor is prosecuting a reasonable business plan and accepts its short-term inability to extract rent from the premises as a consequence of its current circumstances which can be remedied only after the resolution of the *IRS* litigation.

Moreover, the derivative standing proposed by GPP is transparently inappropriate, since it fails the principal tenets of derivative standing.

First, derivative standing must be used to provide a benefit to the estate.  Had GPP proposed to retenant the premises – taking on the burden of an inevitable demand for an NDA – there might be a benefit to the estate.  But GPP notably stops short, and offers only to clear the premises of its present tenant, a tenant that is willing consensually to surrender the premises in support of any Court-approved transaction.  In this context, GPP's offer seeks only its own self-interest, seeking to clear the premises for itself in advance of relief from stay and an opportunity to foreclose and sell.  Derivative standing has only ever been authorized for the benefit of creditors and the estate, and never to enable a foreclosing creditor to pre-position itself for its personal maximum benefit.

Second, and relatedly, derivative standing has only been approved to be exercised by an entity for the benefit of the estate, such as a creditors committee.  Here, the proposed beneficiary is not a representative of the estate, and does not propose to exercise derivative standing to benefit the estate:  it will simply clear the premises, preparatory to its own foreclosure sale.  (Indeed, if it addressed the underlying issue – attempting to retenant the premises with paying tenants – it would likely assert that any rent obtained constituted its own cash collateral, and so no benefit to the estate could be expected.)

The focus of the *Cybergenics* decision on which GPP relies is this very distinction between an individual beneficiary and a benefit to creditors and the estate generally.  There, the question before the Third Circuit sitting *en banc* was:

The question on appeal is whether the decision of the United States Supreme Court in

*Hartford Underwriters Ins. Co. v. Union Planters Bank*, 530 U.S. 1, 147 L. Ed. 2d 1, 120 S. Ct. 1942 (2000), a Chapter 7 case which interpreted the text of 11 U.S.C. § 506(c) to foreclose anyone other than a trustee from seeking to recover administrative costs on its own behalf, operates to prevent the Bankruptcy Court from authorizing the suit described above.

The Third Circuit distinguished *Hartford Underwriters* as a case in which a creditor sought to exercise the trustee's powers for its personal benefit, as opposed to *Cybergenics*, in which the creditors committee sought to exercise the trustee's powers for the benefit of all creditors.  Here, GPP seeks derivative standing to exercise the trustee's powers for its own individual benefit; no benefit to creditors or the estate is proposed or intended.  The analysis of the Third Circuit in *Cybergenics* requires that GPP's request for derivative standing be denied.

**VI.    CONCLUSION**

The Motion should be denied in its entirety.

Respectfully submitted

DATED:  June 16, 2017                          ST. JAMES LAW, P.C.


By:  _/s/  Michael St James_   .
                                                            Michael St. James
                                                            Counsel for the Debtor

# Exhibit

# A

Label Matrix for local noticing
0971-3
Case 17-30314
Northern District of California
San Francisco
Fri Jun  9 18:34:46 PDT 2017

Simon Aron
Wolf, Rifkin, Shapiro, Schulman, Rabkin
11400 W. Olympic Blvd. 9th Fl
Los Angeles, CA 90064-1582

Chief Tax Collection Section
Employment Development Section
P.O. Box 826203
Sacrament, CA 94230-0001

EDD
P.O. Box 826880
Sacramento, CA 94280-0001

Grand Pacific Financing Corp.
1601 Bayshore Hwy.
Suite 202
Burlingame, CA 94010-1508

Green & Post Partners, LP
Eric D Goldberg
DLA Piper LLP (US)
2000 Ave of the Stars #400 North Tower
Los Angeles, CA 90067-4704

Internal Revenue Service
Centralized Insolvency Oper.
P.O. Box 7346
Philadelphia, PA 19101-7346

Lone Oak Fund, LLC
c/o Simon Aron
11400 W Olympic Blvd. 19th Fl
Los Angeles, CA 90064-1550

Lubin Olson, LLP
Attn: Gerald M. Murphy, Esq.
The Transamerica Pyramid
600 Montgomery Street, 14th Floor
San Francisco, CA 94111-2704

Office of the U.S. Trustee / SF
Phillip J. Burton Federal Building
450 Golden Gate Ave. 5th Fl., #05-0153
San Francisco, CA 94102-3661

Andrew K. Alper
Frandzel, Robins, Bloom and Csato
1000 Wilshire Blvd. 19th Fl.
Los Angeles, CA 90017-2427

CA Employment Development Dept.
Bankruptcy Group MIC 92E
P.O. Box 826880
Sacramento, CA 94280-0001

Colin Sampson
U.S. Attorney
450 Golden Gate AVe, Box 36055
San Francisco, CA 94102-3495

Eric Goldberg, Esq.
DLA Piper LLP (US)
2000 Avenue of the Stars
Suite 400 North Tower
Los Angeles, CA 90067-4735

Grand Pacific Financing Corporation
Frandzel Robins Bloom and Csato, L.C.
1000 Wilshire Blvd
Suite 1900
Los Angeles, CA 90017-2427

Miriam E. Hiser
Law Offices of Miriam E. Hiser
550 Montgomery St. #650
San Francisco, CA 94111-6509

Lynette C. Kelly
Office of the United States Trustee
Phillip J. Burton Federal Building
450 Golden Gate Ave. 5th Fl., #05-0153
San Francisco, CA 94102-3661

Lone Oak Fund, LLC
11611 San Vicente Blvd
Suite 640
Los Angeles, CA 90049-6502

Denise M Nasey
c/o Miriam Hiser
550 Montgomery St. #650
San Francisco, CA 94111-6509

Post Green Fell LLC
3336 Dvisadero Street
San Francisco, CA 94123-1906

Andrew L. Alper, Esq.
Frandzel Robins Bloom & Csato
1000 Wilshire Blvd., 19th Floor
Los Angeles, CA 90017-2427

CA Franchise Tax Board
Special Procedures Bankruptcy Unit
P.O. Box 2952
Sacramento, CA 95812-2952

Denise M. Nasey
c/o Lerner Poole, LLP
535 Pacific Avenue, Second Floor
San Francisco, CA 94133-4628

Eric D. Goldberg
DLA Piper LLP (US)
2000 Ave. of the Stars #400 North Tower
Los Angeles, CA 90067-4704

Green & Post Partners
c/o Ralston Capital Fund, Ltd
1050 Ralston Avenue
Los Altos, CA 94022

IRS
P.O. Box 7346
Philadelphia, PA 19101-7346

L & W Construction Services, Inc.
5200 Redwood Hwy S.
Petaluma, CA 94952-9523

Lone Oak Fund, LLC
Simon Aron
Wolf, Rifkin, Shapiro,
Schulman & Rabkin, LLP
11400 W. Olympic Boulevard, 9th Floor
Los Angeles, California 90064-1582

Laurence F Nasey
2035 Divisadero Street
San Francisco, CA 94115-2112

Michael St. James
St. James Law
22 Battery St. #888
San Francisco, CA 94111-5522

```
TRACY HOPE DAVIS                          U.S. Attorney                    End of Label Matrix
Office of the United States Trustee       Civil Division                   Mailable recipients    31
Attn: Lynette C. Kelly                    450 Golden Gate Ave.             Bypassed recipients     0
450 Golden Gate Ave.,                     San Francisco, CA 94102-3661     Total                  31
5th FL. Ste. #05-0153
San Francisco, CA 94102-3661
```

# Exhibit

# B

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

In re

**POST GREEN FELL, LLC,**

Debtor.

Case No. 17-30314 DM

Chapter 11

**PROOF OF SERVICE**

I am over eighteen years of age, not a party in this action, and employed in Miami, Florida at 200 S. Biscayne Boulevard, Suite 2500, Miami, Florida 33131. I am readily familiar with the practice of this office for collection and processing of correspondence for mail/fax/hand/next business day delivery, and they are deposited that same day in the ordinary course of business.

On June 2, 2017, I served the following via U.S. Mail postage prepaid by causing a true and correct copy of the pleadings below to be placed in the United States Mail at Miami, Florida, in sealed envelope(s) with postage prepaid, addressed as set forth below on the attached Service List.

**MOTION OF SECURED CREDITOR GREEN & POST PARTNERS, LP TO CONVERT CASE TO CHAPTER 7 OR, IN THE ALTERNATIVE, FOR DERIVATIVE STANDING TO TERMINATE INSIDER LEASES AND SUE TO EVICT AND COLLECT PAST-DUE RENT FROM INSIDER TENANT [DKT. NO. 42]**

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF SECURED CREDITOR GREEN & POST PARTNERS, LP TO CONVERT CASE TO CHAPTER 7, OR, IN THE ALTERNATIVE, FOR DERIVATIVE STANDING TO TERMINATE INSIDER LEASES AND SUE TO EVICT AND COLLECT PAST-DUE RENT FROM INSIDER TENANT [DKT. NO. 43]**

**NOTICE OF HEARING ON MOTION OF SECURED CREDITOR GREEN & POST PARTNERS, LP TO CONVERT CASE TO CHAPTER 7 OR, IN THE ALTERNATIVE, FOR DERIVATIVE STANDING TO TERMINATE INSIDER LEASES AND SUE TO EVICT AND COLLECT PAST-DUE RENT FROM INSIDER TENANT [DKT. NO. 44]**

DLA Piper LLP (US)

-1-

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct and that this declaration was executed on June 2, 2017 in Miami, Florida.

Dated: June 2, 2017

By */s/ Yohami Lam Guerra*
YOHAMI LAM GUERRA

DLA Piper LLP (US)

WEST\276795423.1

1

<u>Service List</u>

2

**Attorneys for Debtor**
Michael St. James
St. James Law
22 Battery St. #888
San Francisco, CA 94111

Colin Sampson
U.S. Attorney
450 Golden Gate Ave.
Box 36055
San Francisco, CA 94102-3495

3

4

5

**U.S. Trustee**
Lynette C. Kelly
Office of the United States Trustee
Phillip J. Burton Federal Building
450 Golden Gate Ave., 5th Fl., #05-0153
San Francisco, CA 94102

EDD
P.O. Box 826880
Sacramento, CA 94280-0001

Grand Pacific Financing Corp.
1601 Bayshore Hwy., Suite 202
Burlingame, CA 94010-1508

6

7

8

9

Internal Revenue Service:
Centralized Insolvency Operation
P.O. Box 7436
Philadelphia, PA 19101-7346

L & W Construction Services, Inc.
5200 Redwood Hwy S.
Petaluma, CA 94952-9523

10

11

12

Laurence F Nasey
2035 Divisadero Street
San Francisco, CA 94115-2112

13

**Request for Notice:**

14

Lone Oak Fund, LLC
c/o Simon Aron, Esq.
Wolf, Rifkin, Shapiro,
Schulman & Rabkin, LLP
11400 W. Olympic Boulevard, 9th Floor
Los Angeles, California 90064-1582

Denise M. Nasey
c/o Lerner Poole, LLP
535 Pacific Ave, Second Floor
San Francisco, CA 94133-4628

15

16

17

18

Denise M. Nasey
c/o Miriam Hiser, Esq.
550 Montgomery Street, Suite 650
San Francisco, CA 94111-6509

19

20

21

Lubin Olson, LLP
Attn: Gerald M. Murphy, Esq.
The Transamerica Pyramid
600 Montgomery Street, 14th Floor
San Francisco, CA 94111-2704

22

23

24

Grand Pacific Financing Corp.
c/o Andrew L. Alper, Esq.
Frandzel Robins Bloom & Csato
1000 Wilshire Blvd., 19th Floor
Los Angeles, CA 90017-2427

25

26

27

28

DLA Piper LLP (US)

WEST\276795423.1