1  MACDONALD | FERNANDEZ LLP
   IAIN A. MACDONALD (SBN 051073)
2  MATTHEW J. OLSON (SBN 265908)
   221 Sansome Street, Third Floor
3  San Francisco, CA 94104
   Telephone: (415) 362-0449
4  Facsimile: (415) 394-5544

5
   Attorneys for Debtor in Possession,
6  POST GREEN FELL LLC

7

8                    UNITED STATES BANKRUPTCY COURT

9                    NORTHERN DISTRICT OF CALIFORNIA

10 In re                                    Case No.   17-30314-DM-11

11 POST GREEN FELL LLC,                     Chapter 11

12               Debtor.                    **DEBTOR'S MOTION TO SELL REAL
                                            PROPERTY FREE AND CLEAR OF
13                                          LIENS (1776 GREEN STREET, SAN
                                            FRANCISCO) AND PAY COMMISSION**
14
                                           Date:  March 13, 2018
15                                         Time:  2:30 p.m.
                                           Place: Courtroom 17
16                                                 450 Golden Gate Avenue, 16th Floor
                                                   San Francisco, CA
17
                                                   Hon. Dennis Montali
18

19         **Proposed Purchaser**
           Local Capital Group, LLC, its related assignee,
20
           **Asset to be Sold**            **Price**
21         1776 Green Street, San Francisco  $5,750,000.00  (subject to a
                                            $30,000 credit and a $50,000
22                                          escrow holdback)
           (Block 0544, Lot 006)
23
           **Secured Creditors**           **Priority**
24         Green & Post Partners, LP        First
           Denise Nasey                     Second
25         United States of America (IRS)   Third
           Employment Development Department  Fourth
26

27

28

                                                                                    i

COMES NOW Post Green Fell LLC, Debtor-in-Possession herein, and moves for entry of an order approving the sale free and clear of liens the real property commonly known as 1776 Green Street, San Francisco, California (Block 0544, Lot 006), approving payment of a real estate broker's commission, and approving a proposed $50,000 breakup fee, respectfully represents as follows:

## I. JURISDICTION AND VENUE

The Court has jurisdiction of these matters pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

This Motion is made pursuant to Bankruptcy Code Sections 105(a), 363(b), 363(f), 1123(b)(4), Rule 6004 of the Federal Rules of Bankruptcy Procedure and Bankruptcy Local Rule 6004-1. This Motion is based on the memorandum of points and authorities below, the Declarations of Michael Muzzy and Richard Hills, filed herewith, any other pleadings or declarations that may be filed in support hereof, and will be based upon such other evidence and arguments as may be presented prior to or at the hearing on this Motion.

## II. BACKGROUND AND SUMMARY OF RELIEF SOUGHT

The within case was commenced by filing a voluntary chapter 11 petition on April 4, 2017. No trustee has been appointed and the Debtor is in possession of the estate.

Among the assets of the estate is the real property commonly known as 1776 Green Street, San Francisco, California (Block 0544, Lot 006) (the "Property"). Local Capital Group, LLC has agreed to purchase the Property subject to the terms and conditions of the of the Purchase Agreement (the "PSA") is attached as Exhibit "A" to the Declaration of Michael Muzzy, filed herewith. Under the terms of the PSA, Local Capital agrees to purchase the property for the sum of $5.75 million, subject to a $30,000 credit in favor Local Capital and a $50,000 escrow holdback to address certain environmental issues.

Prior to commencement of the case, Debtor retained L & W Construction Services, Inc. to remove and perform environmental remediation work at the Property related to certain underground storage tanks. As part of the services it rendered, L & W removed one or more underground storage tank(s) from the Property and collected soil data in connection therewith. L & W has not released

1

the soil data and reports to Debtor or the San Francisco Department of Public Health because L & W claims that Debtor owes L & W approximately $30,000.00.[1] The Department of Public Health may not issue a "No Further Action" letter for the Property without the release of the soil data and reports for the Property. To address this issue, Debtor and Local Capital agree that in the event that Buyer pays L & W the $30,000, or any portion thereof, prior to the Closing and receives the Soil Data, the Purchase Price shall be reduced by $30,000, for a net purchase price of $5.72 million.

Additionally, the parties agreed that if the Department of Public Health does not issue a "No Further Action" letter for the Property on or before the close of escrow, then escrow agent shall withhold from the purchase price the sum of $50,000 and shall deposit that amount into a separate escrow to pay costs Local Capital actually incurs in obtaining a "No Further Action" letter for the Property. For further details, reference is made to Section 3.1.4 of the PSA.

The Property secures the following claims:

| Priority | Claim Holder | Proof of Claim No. | Amount of Claim |
|---|---|---|---|
| 1st | Green & Post Partners, LP | 4 | $7,044,219.35[2] |
| 2nd | Denise Nasey | None | $486,000.00 |
| 3rd | Internal Revenue Service | 1 | $7,814,470.39[3] |
| 4th | Employment Development Department | None | $152,951.23 |

The claims of Denise Nasey, the Internal Revenue Service, and the Employment Development Department are also secured by two other properties owned by Debtor, to wit: 2360 Post Street, San Francisco, California, and 1213 Fell Street, San Francisco, California, as well as the real property commonly known as 624 Stanyan Street, San Francisco, California, which is the chief asset of the debtor in the *In re 624 Stanyan Street, LLC* bankruptcy case which is pending before this court (Case No. 16-30965-DM-11).

---

[1] Said amount had been secured by a mechanic's lien recorded against the Property which L & W subsequently released. *See infra.*

[2] As of February 28, 2018. *See* Stipulation Between Debtor and Secured Creditor Green & Post Partners, LP re (1) Allowance of Liens and Claims; (2) Sale Process; (3) Relief from Stay; and (4) Orders re Evergreen Refinance, Doc.144.

[3] As of November 12, 2017. *See* Exhibit E to Debtor's Second Amended Status Report, Doc. 124.

1    L & W Construction Services, Inc. had recorded a mechanic's lien against the Property.

2  Because of L & W Construction Services' failure to commence a legal action within the statutory

3  time periods required by applicable law, Debtor demanded that L & W Construction Services record

4  a release of the lien, which L & W Construction Services did. *See* Exhibit "C." L & W Construction

5  Services' claim is, therefore, wholly unsecured.

6    Under the terms of the court-approved listing agreement between Debtor and Vanguard

7  Properties, Debtor's court-approved real estate broker, Vanguard is entitled to a commission of

8  5.25% of the purchase price.  This amount was to be divided as follows:  2.5% to an outside (non-

9  Vanguard) broker representing buyer and 2.75% to Vanguard as the broker representing Debtor.

10  Because of the structure of this sale and there being no broker representing the buyer, the total

11  commission is 2.75% of the purchase price, or $157,300.  Debtor also estimates its share of the

12  closing costs will total approximately $129,464.95, consisting of transfer taxes of $129,375 and a

13  natural hazards report of $89.95.  Debtor is also responsible for payment of a prorated amount of real

14  property taxes based on the closing date of the sale.  Because Debtor's tax obligations pass-through

15  to its equity interest holders, Debtor does not anticipate any tax impacts from the sale to burden its

16  estate.  In connection with the sale, Debtor requests authority to pay these sums, including the

17  broker's commission.

18    Pursuant to the stipulation between Debtor and Green & Post Partners, LP and the terms of

19  section 5.E. of the promissory note executed by Debtor in favor of Green & Post Partners, LP,

20  Debtor may obtain Green & Post Partners release of its lien on the Property without paying the full

21  balance due under the promissory note.  As set forth in the stipulation (docket number 144), the

22  Green & Post Partners estimates the release price as of February 28, 2018, to be $5,597,619.35,

23  consisting of principal of $3,597,000.00, accrued but unpaid interest and late fees of $1,744,989.87,

24  and lenders costs for legal, title, appraisal, and property taxes of $255,629.48.

25    Debtor does not believe the sale will generate sufficient funds to pay Green & Post Partners'

26  release price after payment of the transfer tax, closing costs, and broker's commission.  The parties

27  have conferred, and Green & Posts has agreed to accept the net proceeds from the sale after payment

28  of the transfer tax, closing costs, and broker's commission, up to the then-due release price under the

3

promissory note, but not less than $5.3 million, in exchange for a release of its deed of trust on the Property so long as escrow closes on or before March 31, 2018. Any amounts which remain outstanding under the note held by Green & Post Partners will remain secured by its other collateral (in particular, the real property commonly known as 2360 Post Street, San Francisco, California). Debtor estimates that approximately $5.43 million will be distributed to Green & Post Partners.

This Motion requests authority to sell the Property free and clear of all liens, claims, and encumbrances secured by the Property pursuant to Bankruptcy Code § 363(f). Debtor anticipates that Ms. Nasey, the IRS, and the EDD will each consent to the sale even though Debtor does not anticipate that they will receive a distribution from the sale.

This Motion also requests a determination that Local Capital Group, LLC is a good-faith buyer and is entitled to the protections of Bankruptcy Code § 363(m) and Debtor intends to offer a declaration from Local Capital to support such a finding. Debtor requests that the provisions of Rule 62(a) of the Federal Rules of Civil Procedure and Rule 6004(h) of the Federal Rules of Bankruptcy Procedure that would stay the order approving the sale be waived under the circumstances. Debtor requests approval of the transaction as a private sale not subject to overbidding.

### III. SUMMARY OF PROPOSED SALE

The following is a summary of the material terms of the PSA:

a. Local Capital, or its related assignee, will purchase the Property for the gross price of $5,750,000.00, subject to a $30,000 price reduction and a $50,000 holdback if certain conditions are met. *See* PSA § 3.1.4.

b. The sale will close within 15 days of entry of the Court's order approving the sale or 15 days after the end of the due-diligence period (discussed *infra*), whichever is later.

c. The agreement provides for a due-diligence period ending 30 days after execution of the agreement (February 12, 2018) during which time Local Capital may cancel the agreement and receive a return of its deposit. As recited by the PSA's Summary of Terms, the due diligence expiration date is March 14, 2018. There are no financing contingencies.

d. The agreement requires that Debtor terminate its lease with Automotive Clinic prior to the close of escrow and to deliver the property vacant and free of any tenant or other

4

1  occupant.

2       e.     Within two days of the execution of the PSA, Local Capital will deposit

3  $75,000.00 to escrow.  At the end of the due-diligence period, Local Capital will deposit an

4  additional $75,000.00, for a total of $150,000.00.  Said deposits are refundable only if: (1) the

5  agreement is terminated prior to the end of the due-diligence period; (2) the Bankruptcy Court does

6  not approve the sale, or (3) certain other limited conditions described in Section 4.5 and 19.1 of the

7  PSA.

8       f.     Unpaid real property taxes shall be pro-rated, Debtor shall pay for the transfer

9  tax, a natural hazards report, and the broker's commission to Vanguard.  Each party shall pay its own

10  legal fees.  All remaining closing costs will be borne by Local Capital.

11       g.     In the event Debtor defaults on the PSA and escrow fails to close because of

12  the default, Local Capital is entitled to either (i) cancel the PSA, receive a refund of the deposits, and

13  seek reimbursement for its out-of-pocket, third-party expenses incurred in connection with the

14  proposed sale, up to $50,000, or (ii) seek specific performance of the PSA.  In addition, if Seller

15  breaches by conveying the property to a different buyer, Local Capital shall have the right to seek

16  additional damages from Debtor in an amount equal to the difference between the $5,750,000

17  purchase price and the price of the sale to such third party.  Failure to obtain Court approval of the

18  sale is not a default by Debtor.  *See* PSA § 19.1.1.  In the event Local Capital defaults under the PSA

19  and escrow fails to close, Local Capital forfeits its $150,000 deposit and any interest thereon.  *See*

20  PSA §§ 19.2 & 25.

21       The foregoing summary is provided for the convenience of the Court and parties in interest,

22  and the terms of the PSA shall control in the event of any discrepancy.

23       **IV.  ANALYSIS OF SALE**

24       **A.    Marketing of Assets**

25       The Property was appropriately marketed.  The Property was posted on the MLS system on

26  August 10, 2016, and to date, the posting has been viewed 874 times by registered real estate agents

27  and brokers.  In August 2017, Vanguard posted a 4-foot by 4-foot sign on the building directing

28  interested parties to a dedicated website for the sale of the Property and Debtor's other assets,

5

www.sfgarages.com.  The Property has also been marketed on Vanguard's website, which feeds to competing brokerages' websites (including Sotheby's, Pacific Union, and McGuire Real Estate).  By virtue of inclusion on Vanguard's website, the property was included in the Vanguard Weekly Report, a weekly newsletter distributed to over 14,000 subscribers.

Debtor's agent has fielded no less than 175 calls and about 40 emails regarding the Property, in two main categories:  (1) potential buyers/agents who have seen the sign and (2) agents who have seen the property on MLS.  Debtor's real estate agent called and emailed back every potential buyer and agent, giving them the website address to view photos of and disclosures about the Property.  These marketing efforts resulted in more 45 property tours, of which about six were second showings with architects, engineers, and other professionals.

Under Debtor's prior bankruptcy counsel, Debtor was pursuing auction with a stalking-horse bidder to obtain Court approval of the sale.  Copies of Debtor's proposed Bidding Procedures were distributed to all agents and potential buyers who requested them, a total of about two dozen parties.  Debtor did not receive any offers or letters of intent while the stalking-horse bidding procedures were in effect.

Debtor eventually abandoned the auction and proposed moving forward with Court approval through a private sale on notice to creditors.  Debtor's agent communicated the change in sale procedures to 22 parties who were monitoring the property by email on November 8, 2017, and to a further approximately 10 interested parties over the following 10 days.

Immediately after the November 8 email was sent, Debtor's agent received three offers for the purchase of the Property.  Debtor and the parties who submitted offers then engaged in several rounds of counteroffers.  Following the counteroffers, Local Capital's offer was the highest offer received, and the Debtor determined the terms thereof to be the best achievable under the circumstances.

**B.      Alternatives to Sale**

The most likely alternative to the proposed sale is for Green & Post Partners to foreclose its lien against the Property.  The Debtor expects that this would leave unsecured creditors and the junior lien holders with no recovery.  Accordingly, the Debtor has determined that the proposed sale

6

1    is in the best interests of the estate.

2           **C.     No Relationship to Purchaser**

3           Neither the Debtor nor its Responsible Individual (Larry Nasey) have any known relationship

4    to Local Capital.  Local Capital has no known relationship with any of the estate's major creditors or

5    known parties in interest.  The proposed sale is the result of arms-length negotiations.  Local Capital

6    may assign the Property to a related assignee.  Local Capital expects that such assignee would be a

7    subsidiary of Local Capital or owned by a combination of Local Capital's existing investors, or both.

8    Local Capital does not contemplate assigning the Property to any individual or entity related to the

9    Debtor.

10          **D.     Insider Compensation**

11          Except for the aforesaid purchase price, Local Capital has not offered any compensation to

12   the Debtor, its manager, its responsible individual or any employee or agent thereof.  To the best of

13   the Debtor's knowledge, Local Capital does not contemplate paying any consideration to any person

14   or entity other than the Debtor in connection with the sale.

15                          **V.  ARGUMENT**

16          **A.     THE PROPOSED SALE IS IN THE BEST INTERESTS OF THE ESTATE**

17          The Debtor is entitled to sell the Property upon the terms described above because such a sale

18   is within the Debtor's reasonable business judgment.  *In re Continental Air Lines, Inc.,* 780 F.2d

19   1223, 1226 (5th Cir. 1986) (standard under 11 U.S.C. § 363(b)(1) is "business judgment"); *In re*

20   *Ernst Home Center, Inc.*, 209 B.R. 974, 979 (Bankr. W.D. Wash. 1997).  "[T]he bankruptcy court

21   should presume that the debtor-in-possession acted prudently, on an informed basis, in good faith,

22   and in the honest belief that the action taken was in the best interests of the bankruptcy estate."  *In re*

23   *Pomona Valley Medical Group, Inc.*, 476 F.3d 665, 670 (9th Cir. 2007) (applying business judgment

24   standard).  Where a sale is proposed in good faith and upon a reasonable basis, "[t]he court will not

25   entertain objections to a trustee's conduct of the estate."  *In re Curlew Valley Associates*, 14 B.R.

26   506, 513–514 (Bankr. D. Utah 1981); *see also In re Southern Biotech, Inc.*, 37 B.R. 318, 322–323

27   (Bankr. M.D. Fla. 1983).  This is because the "[Debtor], not the Court, is selling this property."  *In*

28   *re Gulf States Steel, Inc.*, 285 B.R. 497, 516 (Bankr. N.D. Ala. 2002).

7

The Debtor submits that the sale is in the best interests of the estate. While a sale by auction is preferred, no buyers were interested in participating in an auction process for the purchase of the Property. Only after Debtor abandoned the proposed auction did it receive an offer. Debtor negotiated with each of those proposed purchasers and eventually agreed to a sale to the party with the highest offer. The proposed sale price is in excess of the scheduled value of the Property after arms-length negotiations and provides a substantial benefit to the estate by paying down the senior secured lien on the Property, thereby reducing claims against other assets of Debtor which secure junior liens. Following the reduction in the outstanding loan balance to Green & Post Partners, the accrual of interest on that obligation will be significantly reduced and Debtor anticipates promptly proposing a plan of reorganization to address the outstanding claims.

Because the sale is in the best interests of creditors and the estate, the proposed sale should be approved, and the broker's commission and Debtor's share of the closing costs should be paid from the proceeds of the sale.

**B.     THE COURT SHOULD APPROVE THE SALE FREE AND CLEAR OF LIENS ASSERTED AGAINST THE PROPERTY**

The Court may order that a sale be free and clear of liens which attach to the Property. 11 U.S.C. § 363(f). A request to sell an asset free and clear of liens is made by motion and is a contested matter governed by Bankruptcy Rule 9014. Fed. R. Bankr. P. 6004(c). The sale free and clear of a lien or other interest is authorized where:

> (1) Applicable nonbankruptcy law permits sale of such property free and clear of such interest;
> (2) The entity holding the interest consents;
> (3) The interest is a lien and the price at which the property is sold is greater than then aggregate value of all liens on the property;
> (4) The interest is in bona fide dispute; or
> (5) The entity holding the interest could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f). Here, the Court may authorize the sale free and clear of liens because one or more of the entities consents to the sale free and clear of their liens and the junior holders could be compelled to accept a money satisfaction for their interest.

Here, creditors—particularly Green & Post Partners—will likely consent to sale of the

8

property free and clear of their liens, permitting the Court to sell the Property free and clear of their interests. 11 U.S.C. § 363(f)(2).

To the extent they do not consent, the remaining junior creditors could be compelled to accept a money satisfaction for their interest. *Id.* at § 363(f)(5). These junior creditors may be forced to accept a money satisfaction through a foreclosure sale commenced by Green & Post Partners. Cal. Civ. Code §§ 2924j–2924k; *see also In re Jolan, Inc.*, 403 B.R. 866, 869 (Bankr. W.D. Wash. 2009) (holders of junior security interests could be forced to accept a money satisfaction under the default remedies of Article 9 of Washington's enactment of the Uniform Commercial Code, meeting the requirements of § 363(f)(5), even though the sale proceeds would be insufficient to distribute any funds to the holders of junior security interests). Judge Brandt noted in *Jolan* that if the trustee had proposed to sell real property, Washington's judicial and nonjudicial foreclosure laws also met the standard of § 363(f)(5) because the junior liens "attach to proceeds in excess of the costs of sale and the obligation or judgment foreclosed." 403 B.R. at 870.

As in Washington, a holder of a junior lien secured by real property in California may be forced in a nonjudicial-foreclosure proceeding to accept a money satisfaction for its interest by having its interests attach to the proceeds after payment of the senior claims and costs of sale. Cal. Civ. Code §§ 2924j–2924k. Thus, because Green & Post Partners has already consented to the sale of the Property with the net proceeds paid to Green & Post Partners and the holders of junior secured claims may be forced to accept a money satisfaction—that is, any proceeds from this sale over and above the interest of Green & Post Partners—the Court may authorize the sale free a clear of liens even if the junior lien holders do not consent to the sale.

**C.  THE PROPOSED SALE IS IN GOOD FAITH AND THE PURCHASER IS ENTITLED TO THE PROTECTIONS OF BANKRUPTCY CODE § 363(m)**

Local Capital is a good-faith buyer and is entitled to the protections of Bankruptcy Code § 363(m). Although the Bankruptcy Code does not define "good faith," courts have found that the good faith requirement of § 363(m) focuses primarily upon the disclosure of all material sale terms and the absence of fraud or collusion between bidders. *See, e.g., In re Abbotts Dairies*, 788 F.2d at 147–148; *see also In re Apex Oil Co.*, 92 B.R. 847, 869–871 (Bankr. M.D. Mo. 1988). It is typically

9

only "fraud, collusion between the purchaser and other bidders or the Debtor, or an attempt to take grossly unfair advantage of other bidders" that leads to a determination that there was a lack of good faith. *In re M Capital Corp.*, 290 B.R. 743, 748 n.3 (B.A.P. 9th Cir. 2003) (quoting *Community Thrift & Loan v. Suchy (In re Suchy)*, 786 F.2d 900, 902 (9th Cir. 1985).

As further discussed above, the Purchase Agreement was negotiated at arms' length, Local Capital has no material connection to any other party in interest and no special treatment for the Debtors or any insider is proposed. This Motion provides for an open and competitive auction. The Debtor is informed that Local Capital will execute a declaration to support a finding of its good faith in advance of the hearing.

### D. THE STAYS PROVIDED IN RULE 62(a) OF THE FEDERAL RULES OF CIVIL PROCEDURE AND RULE 6004(h) OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE SHOULD BE WAIVED

The Debtor requests that the stays imposed by Rule 62(a) of the Federal Rules of Civil Procedure and Rule 6004(h) of the Federal Rules of Bankruptcy Procedure be waived. All creditors and parties-in-interest have been provided with notice and afforded an opportunity to object, and no party will be prejudiced by waiver of the applicable stays.

### V. PRAYER FOR RELIEF

**WHEREFORE**, the Debtor prays for an order as follows:

1. Granting the Motion and approving the sale to Local Capital for the sum of $5,720,000;

2. Authorizing the Debtor to consummate, and carry out the actions reasonably necessary to close, the sale;

3. Approving the sale free and clear of all liens, claims and encumbrances, with the liens attaching to proceeds of the sale in the same extent, validity, and priority as under non-bankruptcy law;

4. Approving the disbursement of the proceeds from escrow to the holders of secured claims in order of their priority under applicable non-bankruptcy law to the extent funds are available to pay them;

5. Approving and authorizing payment of the aforesaid broker's commissions and

10

1  closing costs, including 2.75% commission to Vanguard Properties, transfer taxes due the City and

2  County of San Francisco, and fees for a natural hazards report;

3          6.      Determining Local Capital Group, LLC to be a good faith purchaser pursuant to

4  Bankruptcy Code Section 363(m);

5          7.      Waiving the stays imposed by Rule 62(a) of the Federal Rules of Civil Procedure and

6  Rule 6004(h) of the Federal Rules of Bankruptcy Procedure; and

7          8.      For such other and further relief as is appropriate in the premises.

8  DATED:  February 13, 2018                    MACDONALD FERNANDEZ LLP

9                                                By: /s/ Matthew J. Olson
                                                     Matthew J. Olson
10                                                    Attorneys for Debtor in Possession,
                                                     POST GREEN FELL LLC
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                                                                                    11